(No. 51149.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. HRANT KEZERIAN, Appellee.

*Opinion filed October 2, 1979.*

William J. Scott, Attorney General, of Springfield, and Clyde L. Kuehn, State's Attorney, of Belleville (Donald B. Mackay, Melbourne A. Noel, Jr., and Carolyn B. Notkoff, Assistant Attorneys General, of Chicago, and Raymond F. Buckley, Jr., of the State's Attorneys Appellate Service Commission, of Mt. Vernon, of counsel), for the People.

Gomric & Strellis, of Belleville (James J. Gomric and John J. Kurowski, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

The State appeals from a judgment of the appellate court (63 Ill. App. 3d 610) affirming the trial court's suppression of certain tape recordings and testimony concerning the conversations recorded thereon. The issue is whether this evidence was inadmissible, as the trial and appellate courts held, because of an alleged failure by the State to comply with the exceptions to the relevant statutory provisions prohibiting eavesdropping. Those provisions are as follows:

> "A person commits eavesdropping when he:
> (a) Uses an eavesdropping device to hear or record all or any part of any conversation unless he does so with the consent of any one party to such conversation and at the request of a State's Attorney;
> (b) Uses or divulges, except in a criminal proceeding, any information which he knows or reasonably should know was obtained through the use of an eavesdropping device." Ill. Rev. Stat. 1975, ch. 38, par. 14–2.

> "Any evidence obtained in violation of this Article is not admissible in any civil or criminal trial ***." Ill. Rev. Stat. 1975, ch. 38, par. 14–5.

On October 21, 1975, St. Clair County State's Attorney Robert Rice was contacted by special agent Robert Magnusen of the Illinois Bureau of Investigation (IBI) concerning a plan to burglarize Cahokia Downs Race Track. Magnusen had learned of the plot from Ronald Fuentes, a security guard at the track, who agreed to cooperate with authorities involved in the investigation. Agent Magnusen requested from State's Attorney Rice authorization to record electronically a conversation between Fuentes and defendant, Hrant Kezerian, which was to take place on the following day. The State's Attorney gave an oral authorization, and the electronic surveillance was conducted successfully on the 22nd.

On October 23 Agent Magnusen again contacted the State's Attorney to obtain approval to record a conversation between Fuentes and defendant which was expected to take place later in the day. An oral authorization was given and the conversation recorded. On October 24, Agent Magnusen gave State's Attorney Rice three separate written forms of authorization which had been prepared and typed by the IBI. Two of the documents confirmed the prior oral authorizations given by the State's Attorney on October 21 and 23, while the third authorized a subsequent recording of a conversation expected to occur on the 25th. The State's Attorney signed all three of these authorizations, and the October 25 conversation between Fuentes and Kezerian was monitored and recorded. Finally, on October 26, a further conversation between Fuentes and Kezerian was recorded pursuant to oral authorization given by the State's Attorney on the 25th, written confirmation of which was prepared by the IBI and signed by State's Attorney Rice on October 29.

The written authorizations, which were virtually identical except for the specified date and time limitations, provided that electronic eavesdropping could be used by the IBI in its Cahokia Downs investigation subject to the

following limitations: (1) that agents of the IBI use the electronic eavesdropping device to hear or record all or any part of any conversation provided they have obtained the consent of any one party to the conversation; (2) that the eavesdropping occur only within the designated hours on the specified date unless further notice is received from the State's Attorney's office; (3) that the eavesdropping take place only within the confines of St. Clair County; and (4) that any information or evidence obtained through the use of the eavesdropping device be used or divulged only in criminal proceedings.

At the hearing on the motion to suppress, Agent Magnusen testified that prior to obtaining each oral authorization from the State's Attorney, he informed Rice of the specific details of each planned electronic surveillance. The agent testified that he told the State's Attorney of the time, place and nature of the anticipated recording, as well as the parties to be involved. Agent Magnusen also testified that the individual wired for sound, Fuentes, was not informed of any limitations or restrictions as to individuals to be recorded.

Based on this testimony the trial court suppressed the recordings and held that the informant, Ronald Fuentes, would be barred from testifying concerning his recorded conversations with defendant because (1) the request for authority to eavesdrop was made by the IBI and not by the State's Attorney, and (2) each authorization granted by the State's Attorney was too broad since it failed to identify the person using the eavesdropping equipment and the person or persons whose conversations were to be recorded. That order was affirmed by a divided appellate court. The majority concluded that the authorizations involved herein were too broad because they did not identify specifically the person conducting the surveillance and the person or persons to be recorded. It felt that at a minimum "the revision of section 14—2 applicable here

required that any eavesdropping be strictly limited to those persons and times specified by the State's Attorney." (63 Ill. App. 3d 610, 617.) It also agreed that Fuentes' direct testimony concerning his conversations with defendant should be suppressed under the "fruit of the poisonous tree" principle. It further held, contrary to the trial court, that the fact that the request for eavesdropping originated with the IBI rather than the State's Attorney was not sufficient justification for suppression of the tape recordings, and that holding is not questioned here.

The earlier quoted section 14—2(a), of the eavesdropping statute, which was in effect at the time of these activities in 1975, differs significantly from both prior and subsequent eavesdropping enactments. The earlier version of section 14—2(a) provided that a person committed the crime of eavesdropping when he used an eavesdropping device to hear or record an oral conversation "without the consent of any party thereto" (Ill. Rev. Stat. 1961, ch. 38, par. 14—2(a)). In *People v. Kurth* (1966), 34 Ill. 2d 387, a divided court interpreted that language to mean that "any party who has not consented to the recording or transmission of his conversation may bar its admission in evidence against him." 34 Ill. 2d 387, 395; but see specially concurring opinions of Schaefer and Underwood, JJ., and *People v. Richardson* (1975), 60 Ill. 2d 189.

The most recent version of section 14—2(a), which became effective on July 1, 1976, involves detailed provisions precluding recording of a conversation unless it is done either (1) with the consent of all of the parties to the conversation, or (2) with the consent of any one party to the conversation and with judicial approval pursuant to article 108A of the Code of Criminal Procedure. Ill. Rev. Stat. 1977, ch. 38, par. 14—2(a).

The proper interpretation of section 14—2(a) as it existed at the time of the activities with which we are

concerned (Ill. Rev. Stat. 1975, ch. 38, par. 14—2(a)) has been the source of differing opinions in recent appellate court cases. On the same day in which the Fifth District Appellate Court handed down its opinion in the present case, a different panel in the same district reached the opposite conclusion on similar facts and issues. (*People v. Mosley* (1978), 63 Ill. App. 3d 437.) The decisions from the other districts are also in conflict. (Compare, *e.g.*, *People v. Porcelli* (1st Dist. 1974), 25 Ill. App. 3d 145, with *People v. Klingenberg* (2d Dist. 1975), 34 Ill. App. 3d 705, and *People v. Knight* (4th Dist. 1975), 28 Ill. App. 3d 232.) We granted the State leave to appeal so as to enable us to resolve the controversy.

It is apparent that the only issue is interpretation rather than constitutionality of the statute, for its literal interpretation does not conflict with either the Federal or State constitutions. Monitoring and recording a conversation without a warrant, but with the consent of one of the parties thereto, is consistent with the fourth amendment. (*United States v. White* (1971), 401 U.S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122; *People v. Richardson* (1975), 60 Ill. 2d 189.) In reaching this conclusion the United States Supreme Court noted:

"Nor should we be too ready to erect constitutional barriers to relevant and probative evidence which is also accurate and reliable. An electronic recording will many times produce a more reliable rendition of what a defendant has said than will the unaided memory of a police agent. It may also be that with the recording in existence it is less likely that the informant will change his mind, less chance that threat or injury will suppress unfavorable evidence and less chance that cross-examination will confound the testimony. Considerations like these obviously do not favor the defendant, but we are not prepared to

hold that a defendant who has no constitutional right to exclude the informer's unaided testimony nevertheless has a Fourth Amendment privilege against a more accurate version of the events in question." 401 U.S. 745, 753, 28 L. Ed. 2d 453, 459, 91 S. Ct. 1122, 1126-27.

Also, while article I, section 6, of the 1970 Illinois Constitution prohibits "unreasonable *** interceptions of communications by eavesdropping devices or other means," this was not intended to render electronic surveillance with one-party consent unconstitutional. (*People v. Richardson* (1975), 60 Ill. 2d 189, 196.) Therefore, it is clear that a literal interpretation of our statute, which requires a "request" by a State's Attorney for surveillance in addition to the consent by one of the parties to the conversation, "has not diminished the defendant's rights but has in fact increased the protection of his rights." *People v. Richardson* (1975), 60 Ill. 2d 189, 195.

In our opinion former section 14—2(a) is not, as defendant characterizes it, an "ambiguous statutory provision." Rather, it seems to us to state clearly and concisely that one does not commit the offense of eavesdropping when he records a conversation "with the consent of any one party to such conversation and at the request of a State's Attorney" (Ill. Rev. Stat. 1975, ch. 38, par. 14—2(a)). Stated affirmatively, this section permits recording of a conversation by means of an eavesdropping device with the consent of any party to the conversation and at the "request" of a State's Attorney. As the appellate court held and as is now conceded, authorization by the State's Attorney is the equivalent of a request, and it is indisputable that these conditions were met in the present case. Informant Ronald Fuentes, who was a party to each of the recorded conversations, consented to the surveillance, and St. Clair County State's Attorney Robert Rice

gave prior oral authorization to each IBI request for surveillance. Although he did so here, nothing in the statute requires the State's Attorney to attach any restrictions or limitations on his authorization for recording, and it is not our function to impose requirements which the General Assembly apparently thought unnecessary.

We accordingly conclude that section 14—2(a) as it existed at the time of the activity here involved (Ill. Rev. Stat. 1975, ch. 38, par. 14—2(a)) did not require that the State's Attorney's authorization contain specific limitations as to the person conducting the surveillance, or the person or persons whose conversations were to be recorded.

It follows, of course, that the trial court improperly suppressed the tape recordings of conversations between Fuentes and defendant. They were obtained in compliance with the then-existing statutory requirements concerning electronic surveillance and, therefore, were not subject to the section 14—5 exclusionary rule (Ill. Rev. Stat. 1975, ch. 38, par. 14—5). Obviously, since the tape recordings were suppressed improperly, it also was error to suppress, under the "fruit of the poisonous tree" doctrine, the testimony of the informant, Ronald Fuentes, concerning his recorded conversations with defendant.

Accordingly, the judgments of the appellate and circuit courts are reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

*Reversed and remanded.*