THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* PHILLIP SYLVESTER, Defendant-Appellee.

First District (3rd Division)   No. 78-477

Opinion filed June 30, 1980.

188

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Iris E. Sholder, and Wendy S. Paul, Assistant State's Attorneys, of counsel), for the People.

Robert A. Novelle and Anthony J. Onesto, both of Serpico, Novelle, Dvorak & Navigato, Ltd., of Chicago, for appellee.

Miss PRESIDING JUSTICE McGILLICUDDY delivered the opinion of the court:

The defendant, Phillip Sylvester, was indicted for the offenses of intimidation, official misconduct, bribery and theft. At trial the court granted defendant's motion to suppress the contents of a recorded conversation between the defendant and another individual. The State appeals pursuant to section 108A—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 108A—10). The sole issue presented for review is whether the trial court erroneously granted the defendant's motion to suppress the tape recorded conversation and all other evidence derived therefrom.

On August 5, 1977, Illinois Department of Law Enforcement Agent Timothy J. O'Brien filed a written application, under oath, for an order approving the use of an eavesdropping device to record any and all conversations from August 6, 1977, at 2 p.m., until August 8, 1977, at 11:59 p.m., between the defendant and Harry Lehr, a consenting third

party. The defendant was identified in the application as "Phil LNU [last name unknown] (M/W, 5'9", 265 lbs., dark complexion, black short cropped hair)." Briefly, the application stated that Lehr, a resident of Elmwood Park, had reported a burglary and auto theft on August 1, 1977. It alleged that when Lehr's auto was recovered in Chicago the defendant, who was a member of the Elmwood Park police department, told Lehr that "he felt Lehr had filed a false police report and that he would see him hang for it." The next day, Lehr received a call to go to the Elmwood Park police station. At the station the defendant was told to type out Lehr's burglary and theft complaints. The application alleged that the defendant threatened "to expose Lehr's lifestyle and nail him to the cross" and verbally abused Lehr for 2½ hours. When no complaints were typed, Lehr asked the defendant what he wanted and the defendant made an offer to have the "whole incident buried" upon the payment of $400. The defendant called Lehr on August 4 and stated he had worked everything out. Arrangements were made to meet at a specified location on August 6, 1977, at 3 p.m.

The application was signed by O'Brien on August 5, 1977, at 2:40 p.m. It was submitted to a circuit court judge the same day and approval was obtained at 2:45 p.m. Also submitted with the application were signed documents captioned "State's Attorney Authorization for Application for Approval of Use of Eavesdropping Device" and "Consenting Party." The former document indicated that the use of an eavesdropping device had been approved by the State's Attorney on August 5, 1977, at 1:30 p.m. This form was signed by Frank DeBoni, Assistant State's Attorney, on behalf of Deputy State's Attorney Thomas M. Burnham. The "Consenting Party" document was signed by Harry Lehr on August 5, 1977, at 1 p.m. and indicated that Lehr had consented to having his conversations with the defendant recorded on the same dates and times and by the same persons specified in O'Brien's application.

The Circuit Court order approving the eavesdropping application was issued to "the agents of Chief Sylvester as stated in the memo dated 8-16-76 and A.S.A. [Assistant State's Attorney] Prendergast, A.S.A. DeBoni, and A.S.A. Chiganos" and allowed the use of an eavesdropping device to record conversations between the defendant and Lehr at the times requested. On August 8, 1977, the judge found that the tape was properly recorded and entered a rentention order. A notice dated October 4, 1977, signed by the judge, informed the defendant that his conversations from August 6 to August 8 were recorded pursuant to court order.

The defendant filed a motion to suppress the recorded conversations. The trial court granted this motion and found the application for use of an

eavesdropping device was insufficient for two reasons: (1) the request for issuance of the eavesdropping order to "the agents of Chief Joseph Sylvester as stated in the memo of 8-16-76 and A.S.A. Prendergast, A.S.A. DeBoni and A.S.A. Chiganos" was an inadequate identification of the law enforcement officers involved, and (2) the State's Attorney's authorization of the application should have been notarized or incorporated by reference into the notarized application. For the reasons stated below, we find the defendant's motion to suppress his tape recorded conversation with Lehr was erroneously granted.

## I

■■ The instant case involves a situation where one party to the recorded conversation consented to the use of an eavesdropping device. One-party consent eavesdropping does not violate the fourth amendment of the United States Constitution (U.S. Const., amend. IV). (*United States v. White* (1971), 401 U.S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122; *People v. Richardson* (1975), 60 Ill. 2d 189, 328 N.E.2d 260, *cert. denied* (1975), 423 U.S. 805, 46 L. Ed. 2d 25, 96 S. Ct. 13; *People v. Swimley* (1978), 57 Ill. App. 3d 116, 372 N.E.2d 887, *cert. denied* (1978), 439 U.S. 911, 58 L. Ed. 2d 257, 99 S. Ct. 281.) Therefore, any restrictions placed on recording the conversations are statutory and not constitutional. *People v. Childs* (1979), 67 Ill. App. 3d 473, 385 N.E.2d 147; *Swimley.*

In order to obtain judicial approval for the use of eavesdropping devices, when one party to the expected conversation has consented, an application must be made in writing, upon oath or affirmation, and must include the following information:

"(1) the identity of the investigative or law enforcement officer making the application and the State's Attorney authorizing the application;

(2) A statement of the facts and circumstances relied upon by the applicant to justify his belief that an order should be issued including: (a) details as to the felony that has been, is being, or is about to be committed; (b) a description of the type of communication sought to be monitored; (c) the identity of the party to the expected conversation consenting to the use of an eavesdropping device; (d) the identity of the person, if known, whose conversations are to be overheard by the eavesdropping device;

(3) a statement of the period of time for which the use of the device is to be maintained or, if the nature of the investigation is such that the authorization for use of the device should not terminate automatically when the described type of communication is overheard or recorded, a description of facts

establishing reasonable cause to believe that additional conversations of the same type will occur thereafter; * * * ." (Ill. Rev. Stat. 1977, ch. 38, par. 108A—3(a).)

The statute further provides that the State's Attorney may authorize an application to the circuit court judge and the judge may grant an order authorizing the use of an eavesdropping device by a law enforcement officer or agency having the responsibility for the investigation of a felony. Ill. Rev. Stat. 1977, ch. 38, par. 108A—1.

At the hearing on the defendant's motion to suppress the tape recording, the trial court ruled the description of authorized agents in the application was insufficient because it did not identify, by name, the law enforcement agents or agency authorized to use an eavesdropping device. The apparent reason for this finding of insufficiency was the judge's feeling that, in the event a violation occurred, the aggrieved citizen should be able to determine readily the names of the individuals involved.

■■ The statute empowers the circuit court judge to authorize the use of an eavesdropping device "by a law enforcement officer or agency having the responsibility for the investigation of any felony under Illinois law." (Ill. Rev. Stat. 1977, ch. 38, par. 108A—1.) There is no requirement that the application or order must identify the individuals or agency so authorized (see Ill. Rev. Stat. 1977, ch. 38, pars. 108A—3(a), 108A—5(a)), and we will not impose such a requirement when the legislature has not done so. *People v. Kezerian* (1979), 77 Ill. 2d 121, 395 N.E.2d 551.

■■ The second basis for the trial court's suppression of the recorded conversation was that the State's Attorney's authorization form was not notarized or incorporated by reference into the notarized application. While there is no requirement that the State's Attorney's authorization of the application for use of an eavesdropping device be in writing (*People v. Lewis* (1980), 84 Ill. App. 3d 556, 406 N.E.2d 11), section 108A—3 of the statute requires that the application, which must be submitted in writing and under oath to the circuit court judge, include the identity of the State's Attorney authorizing it. (Ill. Rev. Stat. 1977, ch. 38, par. 108A—3(a)(1).) The application in the instant case did not contain this information nor did it incorporate by reference the separate document entitled "State's Attorney's Authorization for Application for Approval of Use of Eavesdropping Device," which itself was not notarized. Therefore, we agree with the trial court's finding that the statute governing the use of eavesdropping devices was violated. However, we do not agree that the recording and evidence derived therefrom should have been suppressed.

In reaching this conclusion, we rely on the rationale of Federal decisions interpreting title III of the Omnibus Crime Control and Safe

Streets Act of 1968 (18 U.S.C. §2510 *et seq.* (1976) (title III).) This statute, although not identical to article 108A of the Illinois Code of Criminal Procedure of 1963, is similar. Both statutes were enacted to protect the right of privacy and to provide comprehensive schemes for authorization of communication interceptions. (See *United States v. Kalustian* (9th Cir. 1975), 529 F.2d 585; *People v. Kezerian* (1978), 63 Ill. App. 3d 610, 379 N.E.2d 1246, *rev'd on other grounds* (1979), 77 Ill. 2d 121, 395 N.E.2d 551.) One such similar provision is the Federal statute's requirement of pre-application approval by the Attorney General or any Assistant Attorney General specially designated by the Attorney General. (18 U.S.C. §2516 (1976).) This provision was violated in *United States v. Chavez* (1974), 416 U.S. 562, 40 L. Ed. 2d 380, 94 S. Ct. 1849, because the application for a wiretap stated an Assistant Attorney General authorized the wiretap when in fact the Attorney General gave the authorization. The Supreme Court stated, however, that the deficiency in the application did not require suppression of the evidence obtained because the violated statutory requirement did not " 'directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.' " (*Chavez*, 416 U.S. 562, 575, 40 L. Ed. 2d 380, 392, 94 S. Ct. 1849, 1856, citing *United States v. Giordano* (1974), 416 U.S. 505, 527, 40 L. Ed. 2d 341, 360, 94 S. Ct. 1820, 1832.) The *Chavez* court concluded that the requirement to identify the official authorizing the application served to fix responsibility and facilitate the court's ability to conclude that the application had been properly approved. These functions, however, were not considered central in guarding against unwarranted wiretapping or electronic surveillance. (See also *United States v. Donovan* (1977), 429 U.S. 413, 50 L. Ed. 2d 652, 97 S. Ct. 658.) Thus, the *Chavez* court reversed the trial court's order to suppress the wiretap evidence.

We agree with these principles and, applying them to the instant case, conclude that the tape recorded conversation should not have been suppressed. While the application should have included the identity of the State's Attorney authorizing the application, we hold that the drastic remedy of suppression is not required where only a technical violation occurred. (See *United States v. Lawson* (7th Cir. 1975), 545 F.2d 557.) The record shows that Bernard Carey, the State's Attorney for Cook County, did in fact give prior authorization for the application for approval of the use of an eavesdropping device. Carey gave his oral authorization to Deputy State's Attorney Thomas M. Burnham who in turn relayed the authorization to Assistant State's Attorney DeBoni, who completed the authorization form. A responsible executive determination of the need and justifiability of the interception (*Chavez;*

*Giordano*) in fact was made by the State's Attorney. Therefore, the general purpose of the statute, to protect individual privacy against unwarranted invasions (*Lawson*; *Kezerian*, 63 Ill. App. 3d 610, 614-16, 379 N.E.2d 1250-51) was preserved.

The defendant raises additional reasons why suppression was warranted. Since a reviewing court will affirm the order of a trial court if it is justified in law for any reason or ground appearing in the record, irrespective of whether the particular reason or grounds given by the trial judge are correct or sound (see *People v. Huguley* (1966), 77 Ill. App. 2d 90, 222 N.E.2d 187), we will discuss the merits of these arguments.

## II

Initially, the defendant contends the State's application did not establish reasonable cause to believe that the offense of bribery was about to be committed. The defendant argues that the Illinois eavesdropping statute should be read to encompass traditional search warrant requirements since Federal cases have read such requirements into section 2518 of title III (18 U.S.C. §2518 (1976)) (*e.g., United States v. Kalustian*). He equates the probable cause standard in the Federal statute and fourth amendment case law with the reasonable cause standard in the Illinois eavesdropping statute and alleges a failure to satisfy that standard because the application: (1) was conclusive; (2) failed to specifically identify the defendant or subject to be overheard; (3) failed to set forth sufficient facts and underlying circumstances; (4) failed to establish the reliability of the source of the facts alleged, and (5) contained no information to conclude the communication to be overheard would relate to the alleged felony.

The Illinois eavesdropping statute does not require that the application, in and of itself, establish reasonable cause to believe that a felony had been or was about to be committed. Section 108A—3 of the statute sets forth the information that must be listed in the application. Nowhere is there a reference to reasonable cause. In addition, subparagraph (b) of this section specifically states: "The judge may request the applicant to furnish additional testimony, witnesses, or evidence in support of the application." (Ill. Rev. Stat. 1977, ch. 38, par. 108A—3(b).) Therefore, we conclude that the judge's approval or authorization for use of an eavesdropping device, upon a finding that reasonable cause exists for believing an individual is committing, has committed or is about to commit a felony and that a particular conversation relating to that felony will be obtained (Ill. Rev. Stat. 1977, ch. 38, pars. 108A—4(b), (c)), can appropriately be based on the application submitted together with additional testimony and evidence submitted at his request.

Irrespective of what additional information or testimony, if any, was given at the time the eavesdropping application was reviewed, we reject the defendant's argument because we find the application and accompanying documents were sufficient to enable the judge to make the findings required by statute.

The essence of the general warrant requirements of the fourth amendment is a showing of probable cause to a neutral and detached magistrate whose function is to provide close judicial scrutiny rather than rubber-stamp police requests (*United States v. Ventresca* (1965), 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741). Insofar as the Illinois eavesdropping statute requires judicial approval of requests to conduct electronic surveillance, we agree with the defendant's contention that it is similar to section 2518(1)(c) of title III, which is patterned after search warrant practices (see *Kalustian*). The Illinois statute is dissimilar, however, because it requires one party's consent to the use of an eavesdropping device. This requirement takes the eavesdropping outside the realm of the fourth amendment and search warrant requirements based thereon. *White*; *Richardson*; *Childs*; *Swimley*.

■ A look at the legislative history of article 108A of the Code of Criminal Procedure indicates an intention to prevent the application of search warrant requirements to the monitoring of conversations. In its original form as House Bill 212, the phrase "probable cause" rather than "reasonable cause" appeared. Governor Walker exercised his amendatory veto and made several recommendations, one of which was the substitution of "reasonable" for "probable" cause because the latter term "may be construed too technically; it might be construed to require the standard of proof necessary to issue a conventional search warrant." (Letter from Daniel Walker to members of the House of Representatives, 79th General Assembly (September 26, 1975).) The legislature accepted this recommendation and the bill became law.

A more difficult question is what the term "reasonable cause" means in the context of the Illinois eavesdropping statute since there was no legislative direction on this point. Under Illinois law the phrases "probable cause" and "reasonable cause" have been used interchangeably and have been held to be legally synonymous phrases. (*People v. Wright* (1974), 56 Ill. 2d 523, 309 N.E.2d 537; *People v. Monoson* (1979), 75 Ill. App. 3d 1, 393 N.E.2d 1239; *People v. Hinton* (1977), 45 Ill. App. 3d 925, 360 N.E.2d 451.) It must be presumed that the legislature acted with knowledge of the prevailing case law holding that the two terms are legally the same and thus intended the words to be treated the same. Therefore, the test for reasonable cause is whether the totality of facts and circumstances existing at the time are sufficient to warrant the belief by a man of reasonable caution that an offense has been, is being, or will be

committed. See, *e.g.*, *People v. Robinson* (1976), 62 Ill. 2d 273, 342 N.E.2d 356.

In the instant case the defendant alleges the application fails to establish reasonable cause for believing a felony was about to be committed. The defendant contends the application was conclusive, unsupported by underlying facts and based on hearsay information that O'Brien obtained from Lehr. O'Brien stated in the application that he was informed by Lehr that Lehr was robbed of his automobile and his apartment had been burglarized. O'Brien described the two occasions Lehr met with Officer Phil of the Elmwood Park P.D." On the first occasion, the application stated Officer Phil accused Lehr of filing a false police report. On the second occasion, Lehr encountered Officer Phil when he was called to the station by the Chief of Police of Elmwood Park. The application further stated Officer Phil was instructed to type out Lehr's burglary and auto theft complaints but instead verbally abused Lehr for 2½ hours and threatened to "expose Lehr's lifestyle and nail him to the cross" if Lehr proceeded in his complaints. O'Brien said Lehr asked the officer what he wanted and was told the whole incident could be buried for $400. The next day, Officer Phil contacted Lehr and arrangements were made to meet two days later "to complete the transaction."

■■ The Illinois eavesdropping statute requires a statement of facts and circumstances relied upon by the applicant to justify his belief that a felony has been, is being or is about to be committed. (Ill. Rev. Stat. 1977, ch. 38, par. 108A—3(a)(2).) We believe this requirement was satisfied notwithstanding the existence of hearsay statements in the application. Hearsay statements in an application for the use of an eavesdropping device are not prohibited by statute in Illinois. However, there should be a substantial basis for crediting the hearsay. (*Cf. United States v. Agrusa* (8th Cir. 1976), 541 F.2d 690, *cert. denied* (1977), 429 U.S. 1045, 50 L. Ed. 2d 759, 97 S. Ct. 751, and *United States v. Finn* (7th Cir. 1974), 502 F.2d 938 (Federal statute).) Nor are hearsay statements improper in the narrower context of arrest and search warrants, that the defendant urges us to follow, provided also there is a substantial basis for crediting the hearsay. *United States v. Ventresca* (1965), 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741; *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509; *Jones v. United States* (1960), 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725; *People v. Macias* (1968), 39 Ill. 2d 208, 234 N.E.2d 783, *cert. denied* (1969), 393 U.S. 1066, 21 L. Ed. 2d 709, 89 S. Ct. 721; *Hinton.*

■■ The defendant contends the hearsay statements were not shown to be credible because the application did not establish the reliability of Harry Lehr, the source of O'Brien's information. We reject this argument because we feel the statute does not mandate such a requirement.

Furthermore, we note that even in the context of warrants, it is not essential that the informant be shown to be reliable where the informant is a witness and an ordinary citizen. *People v. Finklea* (1976), 40 Ill. App. 3d 975, 354 N.E.2d 57; see *People v. Hoffman* (1970), 45 Ill. 2d 221, 258 N.E.2d 326, *cert. denied* (1970), 400 U.S. 904, 27 L. Ed. 2d 141, 91 S. Ct. 142. Accord, *United States v. Bell* (5th Cir. 1972), 457 F.2d 1231. Contra, *United States v. Buschman* (E.D. Wis. 1975), 386 F. Supp. 822, *aff'd* (7th Cir. 1976), 527 F.2d 1082.

■■ The defendant also argues that the application was inadequate in identifying him and the subject to be overheard. The statute specifically states that the application must identify the consenting party and the identity of the person, if known, whose conversations are to be overheard. (Ill. Rev. Stat. 1977, ch. 38, par. 108A—3(a)(2)(d).) O'Brien did not know the defendant's full name at the time he applied for an eavesdropping order. Therefore, he more than adequately identified the defendant by giving his first name and physical description.

■■ Although the application should be completed carefully, we note the single typographical error in referring to the defendant as Paul rather than Phil does not warrant a finding that the application should not have been approved. We also reject the defendant's contention that the application should have identified the subject to be overheard, since the statute does not require this information. It merely requires a description of the type of communication sought to be monitored. (Ill. Rev. Stat. 1977, ch. 38, par. 108A—3(a)(2)(b).) The type of communication was described adequately as any and all conversations from August 6, 1977, at 2 p.m., until August 8, 1977, at 11:59 p.m., between the defendant and Harry Lehr.

■■ The defendant next contends that the application failed to set forth sufficient facts and underlying circumstances from which to conclude that the offense of "bribery etc." was being committed. He contends there were no specific allegations that the defendant was a public officer or that the payment to be tendered to the defendant was to influence the performance of any act related to the employment or function of a public employee. (Ill. Rev. Stat. 1977, ch. 38, par. 33—1.) We disagree. The application specifically referred to the defendant as "Officer Phil LNU of the Elmwood Park P.D." and contained references to the Elmwood Park police. A reasonable person could only infer from the application that the defendant was a police officer and public employee who had access to police files and that the payment of $400 was to be made to influence the performance of the defendant's official duties. In determining the existence of reasonable cause, the courts are not unduly technical (*People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280), and in accordance with this philosophy, we are of the opinion that the absence of the term "public

officer" or "public employee" would not render the application insufficient.

■■ The defendant's final argument regarding the application was that it contained no information upon which the circuit court judge could conclude that there was reasonable cause for believing that the conversations to be overheard would relate to the felony alleged. We again disagree. The last two sentences on the first page of the application stated that Lehr received a call from the defendant telling him that everything had been worked out and was told to meet the defendant on August 6, 1977, at a specified location to complete the transaction. Viewing the application in a common-sense fashion (*United States v. Kirk* (8th Cir. 1976), 534 F.2d 1262, *cert. denied* (1977), 433 U.S. 907, 53 L. Ed. 2d 1091, 97 S. Ct. 2971), we find that sufficient facts and circumstances were set forth to justify the judge's finding that reasonable cause existed for believing a felony was about to be committed and that particular conversations concerning that felony would be obtained through the use of the device.

### III

The defendant further contends the order authorizing the use of the eavesdropping device was insufficient because it was not based upon a finding that the conversation to be overheard was related to the felony and because it failed to include such a finding. To support this argument, the defendant argues that the judge could not have made such a finding because the application submitted to him did not adequately describe the conversation to be monitored. For the reasons stated above, we find the application did set forth sufficient facts and circumstances upon which the judge could conclude the conversations to occur from August 6, 1977, to August 8, 1977, between the defendant and Lehr would relate to the alleged felony of bribery.

■■ The defendant argues that the judge's order appearing on a preprinted form was grammatically incorrect and contained numerous errors, misstatements and contradictions, and that it totally omitted the critical and necessary finding that there was reasonable cause to believe the conversation to be overheard would relate to the felony alleged. While there are no misstatements or contradictions in the order, we do agree that it failed to specify that the described conversations would relate to the alleged felony. The applicable portion of the order stated:

> "AND HAVING FOUND THAT THERE IS REASONABLE CAUSE TO BELIEVE THAT THE PARTICULAR CONVERSATIONS SPECIFIED IN THE APPLICATION FOR AN ORDER FOR USE OF AN EAVESDROPPING DEVICE, NO: 77-012, SIGNED BY Timothy J. OBrien [sic] FROM August 6,

1977 at 2:00 P.M. TO August 8, 1977 at 11:59 PM TO OVERHEAR AND/OR RECORD (ANY AND ALL) CONVERSATIONS BETWEEN Harry J. Lehr, Phil LNU (M/W, 5′9″, 265 lbs., dark complexion, black short, cropped hair), * * * DO GRANT AN ORDER * * * TO ELECTRONICALLY OVERHEAR AND/OR RECORD THE ABOVE NAMED CONVERSATION(S)." However, we do not find that this error warrants suppression of evidence because there is no statutory requirement that the judge's authorization order set forth its findings regarding the existence of reasonable cause. See Ill. Rev. Stat. 1977, ch. 38, par. 108A—5.

### IV

Next, the defendant contends the court order was improper because it was grossly overbroad, unrestricted and extensive. He claims that the order was not limited to conversations to which Lehr was a party and that it was not sufficiently limited in time or in the number of persons who could conduct or participate in the recordation of conversations.

The order specifically limited the use of an eavesdropping device to conversations between Harry Lehr, the consenting party, and Phil LNU, the defendant, with the eavesdropping to be conducted by a limited group of authorized personnel. The period of time during which the conversations could be overheard and/or recorded spanned 58 hours. The requirements of the statute, that the order identify the consenting party, the other participant, if known, and the time period during which the eavesdropping device could be used were satisfied. Ill. Rev. Stat. 1977, ch. 38, par. 108A—5(a).

The defendant contends the time limit was unreasonable and relies on *People v. Porcelli* (1974), 25 Ill. App. 3d 145, 323 N.E.2d 1, a case decided under the former eavesdropping statute that did not require judicial approval to eavesdrop. *Porcelli* is not applicable to eavesdropping occurring pursuant to article 108A of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 108A—1 *et seq.*). See *People v. Childs* (1979), 67 Ill. App. 3d 473, 385 N.E.2d 147.

■■ The statute governing the instant case allows the issuance of an order to eavesdrop for a period of up to 10 days. (Ill. Rev. Stat. 1977, ch. 38, par. 108A—5(b).) We do not feel that the 58-hour time period granted by the order was unreasonable since the application indicated an uncertainty as to whether the transaction between the defendant and Lehr would be concluded on August 6, 1977. The application stated that the August 6 meeting was the first confidential meeting between Lehr and the defendant and that additional details may need to be worked out by the parties necessitating another conversation. This statement satisfies the requirement that facts be described establishing reasonable cause to

believe that additional conversations of the same type may occur thereafter. (Ill. Rev. Stat. 1977, ch. 38, par. 108A—3(a)(3).) Based on the information in the application, the order's statement that it would not terminate as soon as the specified conversations were recorded was not overbroad.

As a final reason for overbreadth, the defendant alleges that the order allowed almost any unidentified and unspecified person to conduct and/or participate in the interception and again improperly relies on ·Porcelli. The order in the instant case granted the power to overhear and record the specified conversations to the "agents of Chief Sylvester as stated in the memo of 8-16-76 and A.S.A. Prendergast, A.S.A. DeBoni and A.S.A. Chiganos."

■■ As stated in part I of this opinion, there is no statutory requirement that the law enforcement officers who will actually operate the eavesdropping device be generally or specifically named in the application or order, and this court will not impose such a requirement. Furthermore, in the instant case, we do not believe that the authorization to use an eavesdropping device is unreasonable or overbroad in view of the fact that the statute under certain circumstances permits blanket surveillance when it is impossible for undercover officers to determine beforehand the identity of the person whose conversation is to be recorded, the time that the conversation will take place and the officer to whom the person will speak. *People v. Childs.*

The present statute in Illinois regulating the use of eavesdropping devices contemplates supervision and control by the State's Attorneys and circuit court judges. This supervision and control was maintained in the instant case because the conversations to be monitored were specifically limited to those occurring between the defendant and Harry Lehr. There was no delegation of the State's Attorney's or circuit court judge's discretion under the statute to other law enforcement agencies or officers and the limited intrusion into the defendant's privacy was not unreasonable or unjustified.

## V

■■ As his final argument to support suppression of the evidence obtained from eavesdropping, the defendant alleges violations concerning the State's Attorney's approval. The defendant argues that the statute requires that the State's Attorney's authorization form and the application should have been physically presented to the State's Attorney for approval. As stated in part I of this opinion, the statute does not require the written approval by the State's Attorney nor the submission of the application to the State's Attorney. The applicant must secure the

authorization of the State's Attorney prior to making written application to the circuit court judge since the application for the order must identify the State's Attorney who authorized the application. (Ill. Rev. Stat. 1977, ch. 38, pars. 108A—1, 108A—3(a)(1).) The State's Attorney's authorization was properly obtained before written application was made to the circuit court judge. There was no violation of the statute in this regard.

For the reasons stated above, we reverse the order of the Circuit Court of Cook County which suppressed the recorded conversation and remand this cause for further proceedings.

Reversed and remanded.

McNAMARA and RIZZI, JJ., concur.