THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE HAMMER, Defendant-Appellant.

Second District   No. 2—83—0864

Opinion filed November 15, 1984.

G. Joseph Weller, Josette Skelnik, and Kathleen J. Hamill, all of State Appellate Defender's Office, of Elgin, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Judith M. Pietrucha, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant-appellant, George Hammer, appeals from an order of the circuit court of Winnebago County denying his motion to suppress evidence obtained from court-approved use of an eavesdropping device to record defendant's phone conversation. Defendant contends the trial court erred because reasonable cause did not exist to believe either that defendant had committed a felony or that relevant conversations would be overheard. Because we find that the State's eavesdropping application was sufficient to establish reasonable cause, we affirm.

Defendant was charged by indictment on January 11, 1983, with the offense of arson. While defendant was originally charged in two counts, the State later dismissed count I but proceeded to try defendant on count II, which alleged that defendant, Harley Robert Climer, Sr. (Climer, Sr.), Harley Robert Climer, Jr., (Climer, Jr.), and Clifford Eugene (Jack) Messenger (Messenger) knowingly, by means of fire, damaged real property located at 1122 Emerald Lane, Machesney Park, Winnebago County, with the intent to defraud an insurer.

Preceding the indictment on December 17, 1982, Steven D. Crow, a law-enforcement officer employed by the Illinois Division of Criminal Investigation, filed an application for an order for use of an eavesdropping device accompanied by two affidavits, one filed by Crow and the other by Ronda Jean Varble, an acquaintance of defendant. That same day, the trial court issued an order allowing law-enforcement personnel to use an eavesdropping device to overhear certain conversations between Varble and defendant. Based upon this order, certain conversations were overheard, and thereafter, defendant filed his motion to suppress evidence on March 17, 1983, contending that the State's application was insufficient to establish reasonable cause (see Ill. Rev. Stat. 1981, ch. 38, par. 108A—4) and contained only accusations based upon hearsay.

After hearing oral arguments, the trial court filed an order on April 27, 1983, denying defendant's suppression motion and finding that the supporting affidavits set forth reasonable and probable cause for the issuance of the eavesdropping order. However, the trial court did suppress portions of the taped conversations, which it concluded were either irrelevant, inflammatory or prejudicial to defendant.

The cause then proceeded to trial commencing on May 17, 1983,

which resulted in a mistrial after the jurors failed to arrive at a verdict. The second trial commenced on July 18, 1983. After numerous witnesses testified, including Crow and Varble, who had provided the affidavits for the eavesdropping application, the jury on July 20, 1983, returned a guilty verdict. Defendant thereupon was sentenced to three years' imprisonment.

Defendant contends that the trial court erred in denying his request to suppress the substance of a phone conversation between himself and Varble which was recorded through use of a court-authorized eavesdropping device. Specifically, defendant argues that the court's order authorizing use of the eavesdropping device violated sections 108A—4(b) and (c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 108A—4(b) and (c)) because the order was not predicated on reasonable cause to believe that defendant had committed a felony or that relevant conversations would be heard.

Eavesdropping with one party's consent does not violate the fourth amendment to the United States Constitution. (*United States v. White* (1971), 401 U.S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122, *People v. Swimley* (1978), 57 Ill. App. 3d 116, 124, 372 N.E.2d 887, 894, *cert. denied* (1978), 439 U.S. 911, 58 L. Ed. 2d 257, 99 S. Ct. 281.) Consequently, any restrictions placed on such one-party eavesdropping are statutory and not constitutional. (*People v. Sylvester* (1980), 86 Ill. App. 3d 186, 190, 407 N.E.2d 1002, 1006.) The statutes governing such eavesdropping are contained in article 108A of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 108A—1 *et seq.*). Section 108A—4 permits approval of the eavesdropping where "there is reasonable cause for believing that an individual is committing, has committed, or is about to commit a felony under Illinois law; ***." (Ill. Rev. Stat. 1981, ch. 38, par. 108A—4(b).) Section 108A—4(c) authorizes approval if "there is reasonable cause for believing that particular conversations concerning that felony offense will be obtained through such use; ***." Ill. Rev. Stat. 1981, ch. 38, par. 108A—4(c).

Reasonable cause is present when the totality of facts and circumstances existing at the time are sufficient to warrant the belief by a man of reasonable conscience that an offense has been, is being, or will be committed. (*People v. Woods* (1984), 122 Ill. App. 3d 176, 181, 460 N.E.2d 880, 884; *People v. Sylvester* (1980), 86 Ill. App. 3d 186, 194-95, 407 N.E.2d 1002, 1009; see also *People v. Robinson* (1976), 62 Ill. 2d 273, 276.) In determining the existence of reasonable cause, unlike the situations involving search warrants, courts are not "unduly technical." (*People v. Sylvester* (1980), 86 Ill. App. 3d 186, 196, 407

N.E.2d 1002, 1011.) An affidavit supporting an application for an eavesdropping order need not prove beyond a reasonable doubt that a crime has been committed or even establish a *prima facie* case. *People v. Ellis* (1984), 122 Ill. App. 3d 900, 461 N.E.2d 646; *People v. O'Dell* (1980), 84 Ill. App. 3d 359, 368, 405 N.E.2d 809, 817.

Courts have interpreted the expression "reasonable cause" for purposes of the eavesdropping statute to be synonymous with probable cause. (*People v. Wrestler* (1984), 121 Ill. App. 3d 147, 154, 458 N.E.2d 1348, 1352; *People v. Monoson* (1979), 75 Ill. App. 3d 1, 9, 393 N.E.2d 1239, 1246.) Additionally, the "totality of the circumstances" test enunciated in *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, for determining the existence of probable cause for issuance of a search warrant similarly is applicable to determine if reasonable cause exists for issuance of an order authorizing use of an eavesdropping device. *People v. Wrestler* (1984), 121 Ill. App. 3d 147, 154-55, 458 N.E.2d 1348, 1352-53.

In the instant case, the application executed by Crow requested authorization to overhear and record conversations which might occur between Varble and various people including defendant. In the application, Crow stated his belief that certain felonies including arson had been committed, that Varble had consented to use of an eavesdropping device during the conversations, and that the Winnebago County State's Attorney had authorized the application. Accompanying the application were two supporting affidavits by Crow and Varble. In his affidavit, Varble stated that he was in Climer, Sr.'s, bedroom in December 1981 when Climer, Sr., was on the phone. Varble stated Climer was talking to Hammer and asked him "when the woman was going to get her insurance check." Varble stated that Climer, Sr., told Hammer that if he were not paid soon, Climer, Sr., was going to charge the woman a certain additional amount each week.

Varble further averred that approximately one week after the above discussion took place, Climer, Sr., told Varble that he would loan Varble $100 if Climer, Sr., first received his money from Hammer. In response to Varble's questioning about what Climer, Sr., was "into," Climer, Sr., stated, "It was an arson." During this same conversation, Climer, Jr., entered the room and told his father that he also needed the money. Varble testified that subsequent to this conversation, he heard at Climer, Sr.'s, house on five or six occasions Climer, Sr., call Hammer "about the money that was owed him for the arsons." Varble was certain that the conversation he overheard was between Climer, Sr., and Hammer because Climer, Sr., told him so.

Crow also filed a supporting affidavit wherein he stated he inter-

viewed Shirley Varble (Shirley) on December 2, 1982, regarding the arson of the house on Emerald Lane in Machesney Park, Illinois. Shirley, who is the sister of Climer, Sr., said Climer, Sr., told her that he had set fire to the house with Messenger and Climer, Jr., and that Hammer had hired Climer, Sr., to commit the arson. The affidavit further explicated that Shirley stated she was told by Climer, Sr., that he was angry because he had not yet received the money for the arson, and Shirley overheard Climer, Sr., arguing on the telephone with Hammer about the money, threatening to "burn him [Hammer] out just as he did the others" if he wasn't paid soon.

Crow also averred that Shirley told him that she heard Daisey Climer (Climer, Sr.'s, wife) shout to her husband, who was on the phone with Hammer, that she would burn Hammer out if he didn't pay promptly. Crow also stated Shirley overheard an argument involving Robin Messenger, Climer, Jr.'s, daughter, and Climer, Sr., concerning the fact that Messenger had not received his money for the arson. Shirley also told Crow that Climer, Jr., was angry because he had not been paid the amount he was supposed to receive for setting the fire.

Crow further averred that on December 2, 1982, he interviewed Patsy J. Gregory, who told him that in late February 1982 she overheard Climer, Sr., talking on his telephone to Hammer and demanding "money for the torch he had done on Emerald Lane." Gregory told Crow that Climer, Sr., threatened to burn Hammer's house if he wasn't paid and further stated she heard Climer, Sr.'s, wife also threaten to burn Hammer's house if they weren't paid.

■■ Defendant asserts these affidavits are insufficient to establish reasonable cause because they contain only hearsay. Hearsay statements in an application for the use of an eavesdropping device are not prohibited by statute in Illinois and can support a reasonable-cause determination if a substantial basis exists for crediting the hearsay. (*People v. Sylvester* (1980), 86 Ill. App. 3d 186, 195, 407 N.E.2d 1002, 1010.) While acknowledging this general rule, defendant states the hearsay in the instant case lacks a substantial basis and cites exclusively *People v. Wassell* (1983), 119 Ill. App. 3d 15, 455 N.E.2d 1100, as support for his position. In *Wassell*, a petition for authorization to use an eavesdropping device was executed by a law-enforcement agent. In the petition the agent alleged that the defendant was known to be about to commit solicitation/murder because on two occasions he had contacted a confidential source and asked if the source could arrange to have his wife killed. The agent further alleged that the defendant had arranged to meet twice with an individual to discuss the details of the killing. On the basis of a petition, a form signed by

another agent consenting to having his conversations with the defendant monitored, an authorization form executed by the State's Attorney, and no other extrinsic evidence, the circuit court issued an order authorizing the use of the eavesdropping equipment. This order was subsequently extended, incriminating statements were thereafter overheard, and the trial court denied the defendant's suppression motion. The appellate court reversed, characterizing the statements in the application as "unadulterated hearsay" and emphasizing that no evidence was introduced in support of the application.

■ Defendant argues that, like the application in *Wassell*, the application here also contains only unadulterated hearsay. We find *Wassell* inapposite for several reasons. The application there only contained statements of one special agent; no affidavits accompanied the application. In contrast, in addition to the executed petition here, two sworn affidavits were filed concerning the events in question. These sworn affidavits constituted the additional evidence which was lacking in *Wassell*. Also, the affidavits in this case, although containing hearsay, corroborate each other, and therefore, a substantial basis exists for crediting the hearsay. For example, in both Crow's and Varble's affidavits, Climer, Sr., identified defendant as involved in the arson. In Varble's affidavit and in Crow's affidavit reiterating what he was told by Varble and Gregory, Climer, Sr., expressed his dissatisfaction concerning nonpayment and threatened to burn down defendant's house. In addition, both Varble and Gregory in Crow's affidavit stated that Climer, Sr.'s, wife verbally threatened to burn down defendant's house if payment were not forthcoming. The fact that the affidavits corroborate each other supports a finding of reasonable cause and differentiates these facts from those in *Wassell*.

Defendant contends, however, that both Varble and his wife are not disinterested witnesses, but rather are persons who are motivated to incriminate defendant in order to better their personal positions. In return for his testimony, defendant notes Varble received favorable dispositions of other pending actions. Defendant also emphasizes Varble's wife's obvious interest in protecting her husband. While these alleged biases should affect the weight to be accorded the Varbles' testimony, they do not render irrelevant the Varbles' testimony concerning the determination of reasonable cause. Assessment of witness credibility is for the trial court in the first instance, and the conclusions of the issuing judge regarding reasonable cause are to be accorded great deference by subsequent judges. (*People v. Ellis* (1984), 122 Ill. App. 3d 900, 903, 461 N.E.2d 646, 650.) One court has concluded that if the declaration is sufficiently detailed, it can support a reasonable-

cause determination even if the informant is in jail and may have a motive to lie. (See *People v. Woods* (1984), 122 Ill. App. 3d 176, 460 N.E.2d 880.) Also, while the Varbles are arguably biased, Gregory, whose statements confirm facts contained in Crow's affidavit, did not have any disclosed bias which would affect the weight to be accorded her sworn statements. Therefore, we conclude the record contains sufficient evidence supporting the trial court's ruling.

Several appellate court decisions support affirmance of the trial court in the case at bar. In *People v. Ellis* (1984), 122 Ill. App. 3d 900, 461 N.E.2d 646, this court reversed a trial court order suppressing certain evidence obtained through use of an eavesdropping device. The application stated that the police officer had purchased drugs from a couple named Raymonds, and this court concluded that the application also contained reliable information "from which a person of reasonable caution could likely conclude that the defendant Sam Ellis was the Raymonds' supplier of drugs ***." (122 Ill. App. 3d 900, 903, 461 N.E.2d 646, 650.) In one portion of the opinion, unlike in the instant case, it appears the affiant had direct contact with the defendant, but the reasonable-cause determination there also was predicated on the application implicating the defendant as the Raymonds' drug supplier. This implication of felonious activity conveyed through the Raymonds to the police officer is similar to the hearsay transmitted here, where Varble, the affiant, overheard Climer, Sr., say that Hammer had commissioned the arson. Since this court found the application in *Ellis* sufficient to support a reasonable-cause finding, the same result should obtain here.

Similarly, in *People v. Wrestler* (1984), 121 Ill. App. 3d 147, 458 N.E.2d 1348, the reviewing court upheld the trial court's finding of reasonable cause based solely upon a three-page application of the sheriff which contained the statements made by a sexually abused child concerning her involvement with the defendant. The *Wrestler* court reviewed the application and concluded it demonstrated the child's reliability and credibility. Since the application detailed specific instances of intercourse and where the acts took place, the court also concluded reasonable cause existed to believe the defendant had committed the felony. *Wrestler* is directly analogous to the facts here. Like the sheriff in *Wrestler*, Varble did not speak directly to defendant, but rather conveyed information told to him by Climer, Sr., about defendant's involvement in the arson. Thus, in each case, multiple hearsay provided the basis for the application. The *Wrestler* court's reliance on the hearsay as justification for its reasonable-cause finding supports the trial court's order here. See also *People v. Woods* (1984),

122 Ill. App. 3d 176, 460 N.E.2d 880 (application for eavesdropping order based upon hearsay held sufficient where jailed informant provided a detailed declaration and had provided accurate information to the agent in the past); *People v. Pitchford* (1983), 115 Ill. App. 3d 164, 450 N.E.2d 349 (appellate court reverses trial court's suppression of evidence even though application contained hearsay (*i.e.*, what the informant told the officer concerning defendant's incriminating statements)).

Finally, the appellate court in *People v. Sylvester* (1980), 86 Ill. App. 3d 186, 407 N.E.2d 1002, also reversed the trial court's suppression of evidence even though the application was based upon hearsay. There, the written application which was filed by the agent stated that the informant had been solicited for a bribe by the defendant, a police officer. The statements in the application indicated that the agent had never spoken directly to the defendant. In reversing the suppression order, the *Sylvester* court rejected the defendant's argument that the suppression was proper because the application did not establish the reliability of the informant who had transmitted the information to the agent. As the *Sylvester* court stated, "We reject this argument because we feel the statute does not mandate such a requirement." (86 Ill. App. 3d 186, 195, 407 N.E.2d 1002, 1010.) In light of this disposition, the same result should obtain in the instant case, where the application was accompanied by two affidavits containing corroborating facts regarding defendant's involvement in the arson.

Accordingly, we affirm the order of the circuit court of Winnebago County,.

Affirmed.

SEIDENFELD, P.J., and UNVERZAGT, J., concur.